**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VAHID BESARATI )<br>ZHILA SHIRKOOL )<br>SARVENAZ BESARATI )<br>A.B. )<br>Villa K5, Frond K )<br>Palm Jumeirah )<br>Dubai, United Arab Emirates )<br><br>    Plaintiffs, )<br><br>v. )  Civ. No<br><br>MICHELE THOREN BOND, Assistant Secretary )<br>Bureau of Consular Affairs )<br>U.S. Department of State )<br>2201 C Street, N.W., Room 6811 )<br>Washington, DC 20520 )<br><br>EDWARD J. RAMOTOWSKI, Deputy Assistant )  **COMPLAINT FOR**<br>Secretary for Visa Services )  **MANDAMUS AND**<br>U.S. Department of State )  **DECLARATORY**<br>2201 C Street, N.W., Room 6811 )  **JUDGMENT**<br>Washington, DC 20520 )<br><br>ROBERT WALLER, Consul General )<br>U.S. Consulate General – )<br>Abu Dhabi, United Arab Emirates )<br><br>    Defendants. )<br> )| |

## COMPLAINT FOR MANDAMUS AND DECLARATORY JUDGMENT

The Plaintiffs, VAHID BESARATI, ZHILA SHIRKOOL, SARVENAZ BESARATI, and A.B., through undersigned counsel, complain of the Defendants, MICHELE THOREN BOND, Assistant Secretary, Bureau of Consular Affairs, U.S. Department of State; EDWARD J. RAMOTOWSKI, Deputy Assistant Secretary for Visa Services, U.S. Department of State; and ROBERT WALLER, Consul General, U.S. Consulate General – Abu Dhabi, United Arab Emirates ("UAE"), as follows:

## I. <u>PREFATORY STATEMENT</u>

1.  This is an action to compel Defendants and those acting under them to take all appropriate
    action immediately and forthwith to issue a decision on the immigrant visa applications of
    the Plaintiffs Vahid Besarati ("Mr. Besarati"), Zhila Shirkool ("Ms. Shirkool"), their 22-year-
    old daughter Sarvenaz Besarati ("Sarvenaz"), and their minor child A.B., which have been
    pending at the U.S. Embassy in Abu Dhabi, UAE ("the Embassy") since on or before
    October 8, 2014. Plaintiffs have yet to receive a decision on their pending immigrant visa
    applications, despite multiple inquiries over the past year and a half. After filing their visa
    applications based on an approved Form I-526 Immigrant Petition by Alien Entrepreneur, the
    Plaintiffs attended an in-person interview at the Embassy on November 13, 2014. Since that
    interview, they have been advised only that their applications are undergoing "administrative
    processing" and the Embassy cannot predict when processing will be completed. Plaintiffs'
    visa applications have now been pending at the Embassy for nearly 20 months and counting.
    This unexplained delay is egregious and unreasonable, and Plaintiffs respectfully request that
    this Court compel Defendants to perform their mandatory duty and issue a decision on the
    long-pending immigrant visa applications without further delay.

## II. <u>JURISDICTION</u>

2.  This is a civil action brought pursuant to 8 U.S.C. § 1329 (jurisdiction of the district courts),
    28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1361 (action to compel an
    officer of the United States to perform his duty), to redress the deprivation of rights,
    privileges, and immunities secured to the Plaintiffs, by which statutes jurisdiction is
    conferred, to compel Defendants to perform a duty that Defendants owe to Plaintiffs.

Jurisdiction is further conferred by 5 U.S.C. §§ 555(b) and 704, the Administrative Procedure Act ("APA").

3. Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." To be clear, Plaintiffs are challenging Defendants' persistent failure to adjudicate their immigrant visa applications, not challenging a decision that falls within Defendants' discretion. Jurisdiction exists for this Court to consider whether the Embassy has the authority to indefinitely withhold adjudication of Plaintiffs' immigrant visa applications. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 2016 U.S. Dist. LEXIS 10273, at *54-*56 (D.D.C. Jan. 28, 2016) (holding that "visa applicants may challenge the Government's suspension (rather than adjudication) of their visa applications" and that "because the applications … remain in 'administrative processing' and, therefore, have not been finally refused, the doctrine of consular nonreviewability does not bar their claims"); *Maramjaya v. United States Citizenship & Immigration Servs.*, 2008 U.S. Dist. LEXIS 124170, at *12 (D.D.C. Mar. 26, 2008) (finding that because "plaintiff does not challenge the visa decision of any consular official … this case has not procedurally progressed to the point where consular immunity would bar judicial review"); *see also Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) (finding that district court has jurisdiction to issue mandamus order against consular official where consulate has failed to issue decision on pending visa application);

*Raduga USA Corp. v. United States Dep't of State*, 440 F. Supp. 2d 1140, 1149 (S.D. Cal. 2005) (same).

4. A consular officer is required by law to act on immigrant visa applications. 22 C.F.R. § 42.81. By regulation, "When a visa application has been properly completed and executed before a consular officer, … the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81(a). Thus, the relief sought here is not discretionary but is, by definition, a mandatory duty. *See Matter of Sealed Case*, 151 F.3d 1059, 1063 (D.C. Cir. 1998); *see also First Federal Savings and Loan Ass'n of Durham v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988).

5. The APA requires Defendants to carry out their duties within a reasonable time. 5 U.S.C. § 555(b) (providing that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"). Where an agency fails to render a decision within a reasonable time, the Court has authority under 5 U.S.C. § 706(1) to compel the agency to do so. 5 U.S.C. § 706(1) (conferring power on the U.S. district courts to compel agencies to perform "action unlawfully withheld or unreasonably delayed"). Whether to adjudicate an immigrant visa application is not discretionary, but is governed by 5 U.S.C. § 555(b), which requires the Embassy to take action on a matter "within a reasonable time." *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States*, 2016 U.S. Dist. LEXIS 10273, at *66 (finding that adjudication of plaintiffs' visa applications "within a reasonable time is non-discretionary" and that "the Court has subject matter jurisdiction to hear [the

plaintiffs'] claims"). As set forth below, the continued delay in rendering a decision on the Plaintiffs' immigrant visa applications is unreasonable and demonstrates the Defendants' failure to take a discrete action that is mandated by law.

6. Finally, this Court has jurisdiction over the present action pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, to declare Defendants' failure to issue a decision on Plaintiffs' pending visa applications to be arbitrary and capricious, unconstitutional, and a violation of the Immigration and Nationality Act ("INA"), the federal regulations, and the APA. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 565 (D.C. Cir. 1970); *see also* 5 U.S.C. §§ 555(b), 706(1), 706(2).

## III. <u>VENUE</u>

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), because this is an action against officers and agencies of the United States in their official capacities, brought in the district where Defendants reside and where a substantial part of the events or omissions giving rise to Plaintiffs' claim have occurred.

## IV. <u>PARTIES</u>

8. Plaintiff VAHID BESARATI is a citizen of Iran who resides in Dubai, UAE. Mr. Besarati is the beneficiary of a Form I-526 Immigrant Petition by Alien Entrepreneur that was approved by U.S. Citizenship and Immigration Services ("USCIS") on December 17, 2013. Based on the approved I-526 petition, Mr. Besarati submitted an immigrant visa application that was completed and forwarded to the U.S. Embassy in Abu Dhabi, UAE on October 8, 2014.

9.  Plaintiff ZHILA SHIRKOOL is Mr. Besarati's wife; Plaintiff SARVENAZ BESARATI is the couple's 22-year-old daughter; and A.B. is the couple's minor child. Ms. Shirkool, Sarvenaz, and A.B., all of whom are citizens of Iran, are derivative beneficiaries of Mr. Besarati's approved Form I-526 petition and each submitted an immigrant visa application that was completed and forwarded to the U.S. Embassy in Abu Dhabi, UAE on October 8, 2014.

10. Defendant MICHELE THOREN BOND is Assistant Secretary, Bureau of Consular Affairs, at the U.S. Department of State. This suit is brought against Assistant Secretary Bond in her official capacity, as she is charged with oversight of all consular – including immigrant visa – matters.

11. Defendant EDWARD J. RAMOTOWSKI is Deputy Assistant Secretary for Visa Services at the U.S. Department of State. This suit is brought against Deputy Assistant Secretary Ramotowski in his official capacity, as he is charged with all matters relating to visas and the administration of visa-related laws.

12. Defendant ROBERT WALLER is Consul General at the U.S. Embassy in Abu Dhabi, UAE. This suit is brought against Consul General Waller in his official capacity, as he is responsible for oversight of all consular activities of the Consulate General.

## V. <u>FACTS AND PROCEDURAL HISTORY</u>

### A. The EB-5 Immigrant Investor Program

13. Through passage of the Immigration Act of 1990, Congress created the USCIS Immigrant Investor Program, also known as the Employment-Based Fifth Preference ("EB-5") Program.

Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989-90 (1990) (codified at INA § 203(b)(5),

8 U.S.C. § 1153(b)(5)). The EB-5 Program's purpose is to stimulate the U.S. economy

through job creation and capital investment by foreign investors. Under the EB-5 Program,

foreign investors have the opportunity to obtain U.S. lawful permanent resident status for

themselves, their spouses, and their minor unmarried children by making a certain level of

capital investment and associated job creation or preservation in the United States. In 1993,

Congress announced a related pilot program – now known simply as the "Immigrant Investor

Program" – that introduced the concept of the "regional center." Department of Commerce,

Justice and State, the Judiciary, and Related Agencies Appropriations Act of 1993. Pub. L.

No. 102-395, § 610, 106 Stat. 1828, 1874 (1992). Regional centers were designed to pool

investor money in a defined industry and promote economic growth in a specific geographic

area.

14. The regional center model within the Immigrant Investor Program offers an immigrant

investor already-defined investment opportunities, thereby reducing his or her responsibility

to identify acceptable investment vehicles. Either U.S. citizens or foreign nationals can

operate regional centers, which can be any economic unit, public or private, that is engaged

in the promotion of economic growth, improved regional productivity, job creation, or

increased domestic capital investment. As of May 2, 2016, USCIS reports that it has

approved 834 regional centers throughout the United States. USCIS, Immigrant Investor

Regional Centers Homepage, *available at* http://www.uscis.gov/working-united-

states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/immigrant-

investor-regional-centers (last visited May 27, 2016).

15. The EB-5 Program has three principal elements: (1) the immigrant's investment of capital,

(2) in a new commercial enterprise, (3) that creates jobs.

16. The statute governing the EB-5 Program provides that the immigrant investor must invest at

least $1,000,000 in capital in a new commercial enterprise that creates not fewer than ten

jobs. 8 U.S.C. § 1153(b)(5)(C)(i). An exception exists if the immigrant investor invests his or

her capital in a new commercial enterprise that is principally doing business in, and creates

jobs in, a "targeted employment area." In such case, the immigrant investor must invest a

minimum of $500,000 in capital. 8 U.S.C. § 1153(b)(5)(C)(ii); 8 C.F.R. § 204.6(f)(2).

17. The statute governing the EB-5 Program defines a "targeted employment area" as, at the time

of investment, a rural area or an area that has experienced unemployment of at least 150

percent of the national average rate. 8 U.S.C. § 1153(b)(5)(B)(ii). Under 8 C.F.R. § 204.6(i),

a state government may designate a geographic or political subdivision within its boundaries

as a targeted employment area based on high unemployment in that area. Such a designation,

referred to as a regional center, is defined as "any economic unit, public or private, which is

involved with the promotion of economic growth, including increased export sales, improved

regional productivity, job creation, or increased domestic capital investment." 21st Century

Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, 116 Stat.

1758, at §11037(a)(2) (2002).

18. A "commercial enterprise" is defined as "any for-profit activity formed for the ongoing conduct of lawful business." 8 C.F.R. § 204.6(e). Commercial enterprises established after November 29, 1990, are considered "new" commercial enterprises for purposes of the EB-5 Program. *Id.*

19. The job-creation requirement for EB-5 participants provides that the investment must create no fewer than ten full-time jobs in the United States for authorized workers, not including the immigrant investor, his or her spouse, and any sons or daughters the investor may have. 8 U.S.C. § 1153(b)(5)(A)(ii).

20. An immigrant investor applies for EB-5 classification by filing a Form I-526 Immigrant Petition by Alien Entrepreneur with USCIS. Where the investment is within a designated regional center, the I-526 petition must include evidence that the applicant "has invested or is actively in the process of investing within a regional center which has been approved" by USCIS. 8 C.F.R. § 204.6(m)(8).

21. Approval of the I-526 petition by USCIS allows an applicant to obtain conditional lawful permanent resident ("CLPR") status for a 2-year period.[1] To become a CLPR, an applicant who is outside the United States must apply for an immigrant visa at the appropriate U.S. embassy or consulate, and the applicant cannot proceed to the United States until consular processing is completed and an immigrant visa has been issued.

**B.  Mr. Besarati's I-526 Petition and Immigrant Visa Processing**

---

[1] At the conclusion of the 2-year conditional permanent residence period, an immigrant entrepreneur must file a Form I-829 Petition by Entrepreneur to Remove Conditions. *See* 8 C.F.R. § 216.6.

22. On July 18, 2012, Mr. Besarati filed with USCIS a Form I-526 Immigrant Petition by Alien Entrepreneur, based on his $500,000 investment in a project within a designated regional center. The I-526 petition was approved by USCIS on December 17, 2013. *See* Exh. 1.

23. Based on the approved I-526 petition, Mr. Besarati and his wife and children each completed a Form DS-260 Immigrant Visa and Alien Registration Application, which they submitted online to the U.S. Department of State's National Visa Center ("NVC"). On February 20, 2014, the NVC issued an Immigrant Visa and Alien Registration Application Confirmation to each of the Plaintiffs, confirming receipt of their immigrant visa applications. *See* Exh. 2.

24. On October 8, 2014, the NVC issued an Interview Letter informing Plaintiffs that domestic pre-processing of their immigrant visa applications had been completed and the applications were being forwarded to the U.S. Embassy in Abu Dhabi, UAE for consular processing. *See* Exh. 3. The letter stated further that an immigrant visa interview had been scheduled for Mr. Besarati, Ms. Shirkool, and their children on November 13, 2014 at 8:00 a.m. *Id.*

25. On November 13, 2014, as scheduled, the Plaintiffs appeared at the Embassy for their immigrant visa interview. At the conclusion of the interview, the consular officer informed Mr. Besarati that everything appeared to be in order and no additional documents were required.

26. Since the interview, Plaintiffs have submitted numerous inquiries to the Embassy and the U.S. Department of State in the form of electronic case inquiries, e-mail inquiries, inquiries through their designated EB-5 regional center, congressional inquiries from their U.S. Representatives, and inquiries to the State Department's LegalNet e-mail address at

legalnet@state.gov. All inquiries have resulted in either no response or a generic response

indicating that the case is undergoing "administrative processing." For example, in response

to one inquiry from Congressman Jim Renacci (R-OH), the Immigration Visa Section of the

Embassy replied on May 12, 2016 as follows:

> Our records indicate that Mr. and Mrs. Besarati's visa application is still
> undergoing administrative processing. Administrative processing often lasts about
> 90 days, but in some instances, it can take several months.
>
> We realize that these extended time periods cause frustration to many individuals.
> Nonetheless, the US. Embassy Abu Dhabi, like all U.S. Embassies and
> Consulates, must adjudicate visas in accordance with the provisions of the law,
> and, in some cases, this involves extensive administrative processing. While we
> cannot predict when the processing of Mr. Besarati's visa will be completed,
> please be assured that the Embassy and the State Department are aware of your
> concerns and will do all we can to see that the visas are adjudicated as soon as Mr.
> Besarati's administrative processing are complete.

27. Plaintiffs have exhausted all administrative remedies available to them. Since their immigrant

visa interview on November 13, 2014, they have submitted at least 16 different inquiries

through various channels regarding their pending visa applications. In response, the Embassy

and the U.S. Department of State have either not replied or have offered only a generic

response that the case is undergoing "administrative processing," with no indication of when

a decision might finally be issued on the family's visa applications.

28. The Defendants' persistent delay is causing considerable hardship to the Plaintiffs. During

this period Mr. Besarati has been unable to work or to make concrete plans for his and his

family's immigration to the United States. Moreover, Mr. Besarati's 22-year-old daughter

Sarvenaz has been forced to put her education on hold, as she cannot enter the United States

to commence classes at any of the U.S. colleges to which she has been accepted until she receives an immigrant visa.

## VI. CAUSE OF ACTION

29. Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-28 above.

30. Plaintiffs' immigrant visa applications have been pending at the Embassy for nearly 20 months, with no explanation other than that the case is undergoing "administrative processing." However, according to the Embassy, the average processing time for such cases is only four to six months. *See* http://dubai.usconsulate.gov/interview_pending2.html (last visited May 27, 2016). Plaintiffs' applications have been pending for more than three times beyond the average administrative processing timeframe.

31. The issuance or denial of visas is the responsibility of consular officers under the INA, federal regulations, and the State Department's Foreign Affairs Manual ("FAM"). *See* INA § 221(a)(1)(A), 8 U.S.C. § 1201(a)(1)(A); INA §§ 101(a)(9), (16), 8 U.S.C. §§ 1101(a)(9), (16); 22 C.F.R. § 42.71(a); 9 FAM 504.10-3(A)(1)(c); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1164 (D.C. Cir. 1999) ("The INA confers upon consular officers the exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations."); *Patel*, 134 F.3d at 933 ("[I]t is uncontested that only State Department consular officers have the power to issue visas.").

32. In general, a consular officer's decision to grant or deny a visa is not subject to judicial review; this is known as the doctrine of consular nonreviewability. *See Mostofi v.*

*Napolitano*, 841 F. Supp. 2d 208, 210-11 (D.D.C. 2012); *see also Saavedra Bruno*, 197 F.3d at 1159 ("The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review[.]"). However, where a plaintiff challenges the authority of a consular officer to either take or fail to take an action, "as opposed to a decision taken within the consul's direction, jurisdiction exists." *Patel*, 134 F.3d at 931-32 (footnotes and citations omitted); *see also Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States*, 2016 U.S. Dist. LEXIS 10273, at \*55-56 ("[T]he doctrine holds only that 'there may be no judicial review of [] <u>decisions</u> to exclude aliens' … but does not preclude Plaintiffs from challenging the Government's failure to decide.") (quoting *Saavedra Bruno*, 197 F.3d at 1162).

33. The doctrine of consular nonreviewability is inapplicable here. Plaintiffs are not asking the Court to review the Embassy's decision to approve or deny a visa request. Rather, in this case the Embassy has failed to render *any* decision, despite the nearly 20 months that have passed since Plaintiffs' completed visa applications were forwarded from the NVC. Plaintiffs seek only to compel the Embassy to make a decision on their pending immigrant visa applications, which the consular office "is required by law to make" in the first place. *Raduga USA*, 440 F. Supp. 2d at 1149. Action on an immigrant visa application by a consular officer is mandatory, as in response to a properly completed and executed visa application, the consular officer "must either issue or refuse the visa." 22 C.F.R. § 42.81(a).

34. The Plaintiffs are understandably eager to receive a decision on their immigrant visa applications. The delay in adjudication impacts Mr. Besarati's ability to immigrate to the

United States with his family, postpones the commencement of his statutorily mandated two-year conditional permanent residence period, 8 U.S.C. § 1186b, interferes with his professional advancement, disrupts his daughter Sarvenaz's desire to attend college in the United States, and delays the date on which he will be eligible to apply for naturalization to become a U.S. citizen.

35. Consequently, Plaintiffs seek to compel Defendants to make a decision on their immigrant visa applications without further unreasonable delay. As noted, the relief sought is not discretionary, but mandatory. *See* INA § 203(b)(5)(A), 8 U.S.C. § 1153(b)(5)(A) ("Visas *shall* be made available ... to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise (including a limited partnership) ....") (emphasis added); 22 C.F.R. § 42.81(a); *see also Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 761 (D.C. Cir. 1997) (issuing writ of mandamus to prevent government defendant "from excusing its own delay" in complying with a clear statutory obligation). Plaintiffs do not have any alternative means to obtain a decision on their applications and their right to issuance of the writ is "clear and indisputable." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988); *see also Sealed Case*, 151 F.3d at 1063 (holding that mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act and no other adequate means exist to attain the relief sought).

36. As all administrative remedies have now been exhausted, and Plaintiffs are suffering a continuing harm due to Defendants' persistent delay, there exists no other adequate remedy

than the filing of this mandamus complaint. Accordingly, Plaintiffs respectfully urge this Court to assume jurisdiction and compel Defendants and those acting under them to render a decision on their pending immigrant visa applications without further unreasonable delay.

## VII. <u>CLAIMS</u>

37. Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-36 above.

38. A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 113 (D.D.C. 2005); *see also Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002); *Patel*, 134 F.3d at 933; *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 420 (S.D.N.Y. 2006). Plaintiffs meet these criteria.

39. First, Plaintiffs have a clear right to the relief requested, as they have fully complied with all of the statutory and regulatory requirements for obtaining immigrant visas based on Mr. Besarati's approved Form I-526 petition, including the submission of all necessary documentation and the payment of all required fees. In response, Defendants have unreasonably failed to make a decision or provide any information about the status of Plaintiffs' applications, other than that they are undergoing "administrative processing." Defendants are required by regulation to make a decision on the Plaintiffs' applications. *See* 22 C.F.R. §§ 42.71(a), 42.81(a). And pursuant to 5 U.S.C. §§ 555(b) and 702 (APA), "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within*

15

*a reasonable time*, each agency shall proceed to conclude a matter presented to it."

(Emphasis added).

40. Second, Defendants have a clear duty to act upon and make a decision on Plaintiffs' immigrant visa applications. This duty is owed under the INA, the federal regulations, and the State Department's Foreign Affairs Manual. *See* INA § 203(b)(5)(A), 8 U.S.C. § 1153(b)(5)(A); 22 C.F.R. §§ 42.71(a), 42.81(a); 9 FAM 504.10-3(A)(1)(c); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) ("When the suit is one challenging government action or inaction, [and] the plaintiff is himself an object of the action (or foregone action) at issue, . . . there is ordinarily little question that the action or inaction caused him injury, and that a judgment preventing or requiring the action will redress it."); *Manmohanjit Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (noting that regulations reflect a nondiscretionary duty to process applications for immigration benefits).

41. Although there is no statutory deadline for rendering a decision on an immigrant visa application, there is a nondiscretionary duty to take such action within a reasonable period of time. *See* 5 U.S.C. §§ 555(b), 706(1); *see also Sierra Club v. Thomas*, 828 F.2d 783, 794 (D.C. Cir. 1987) (stating that "regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice"); *Liu v. Novak*, 509 F. Supp. 2d 1, 9 (D.D.C. 2007) (holding that the APA requires the government to act within a reasonable period of time). Defendants have failed to perform this duty and have, in fact, far exceeded their own estimated processing times.

42. Generally, in determining what is "unreasonable," courts may look to a variety of factors, including any Congressional guidance on what it considers to be reasonable, internal operating procedures established by the agency, processing times in similar cases, the source of the delay, and the facts of the particular case. *See TRAC v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). A court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1058-59 (W.D. Wis. 2007). The delay in making a decision on Plaintiffs' applications extends well beyond the Embassy's own estimated 4-6 month administrative processing timeframe. *See* http://dubai.usconsulate.gov/interview_pending2.html (last visited May 27, 2016).. Considering all of these factors, Defendants' delay is plainly unreasonable.

43. Third, the Court should compel Defendants to issue a decision on Plaintiffs' applications, because no other adequate remedy is available. Defendants have unreasonably failed to perform their clear duty to act. Despite Plaintiffs' filing of all necessary documentation, payment of all required fees, and submission of numerous inquiries through various different channels, no decision or explanation for the continued delay has been provided, other than that the applications are undergoing "administrative processing" with no prediction of when such processing will be completed. Plaintiffs have now exhausted all available administrative remedies and mandamus action is appropriate. *See* 28 U.S.C. § 1361; 28 U.S.C. § 1331.

44. As Defendants have failed to carry out their mandatory duty to make a decision on Plaintiffs' immigrant visa applications, having unreasonably delayed action for nearly 20 months, and as Plaintiffs have exhausted all available administrative remedies, this Court should instruct

Defendants to render a decision on Plaintiffs' applications and either issue or refuse their immigrant visas without further unreasonable delay. *See* 22 C.F.R. § 42.81(a).

45. Defendants' delay is without justification and has forced Plaintiffs to resort to this Court for relief, and Plaintiffs are entitled to attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2).

## VIII. PRAYER

WHEREFORE, the Plaintiffs pray that this Court:

1. Compel Defendants and those acting under them to perform their duty to render a decision on Plaintiffs' pending immigrant visa applications without further delay;

2. Enter a declaratory judgment that Defendants' unreasonable delay violates the INA, federal regulations, and the APA, and that such delay is arbitrary and capricious;

3. Grant reasonable attorney's fees and costs to Plaintiffs under the Equal Access to Justice Act; and

4. Grant such other and further relief as this Court deems appropriate under the circumstances.

Respectfully submitted this _7th_ day of June 2016,

By counsel, _____/s/ Thomas K. Ragland_____

Thomas K. Ragland
D.C. Bar No. 501021
CLARK HILL PLC
601 Pennsylvania Avenue, NW
North Building, Suite 1000
Washington, DC  20004
T: (202)552-2360
F: (202)552-2384
E: tragland@clarkhill.com

*Counsel for Plaintiffs*